RICHARD D. PATTERSON *v.* COUNCIL ON PROBATE
JUDICIAL CONDUCT ET AL.
(13691)

COUNCIL ON PROBATE JUDICIAL CONDUCT *v.*
RICHARD D. PATTERSON
(13719)

PETERS, C. J., SHEA, CALLAHAN, GLASS and COVELLO, Js.

Argued May 2—decision released July 10, 1990

*Roger J. Frechette,* with whom was *Matthew E. Frechette,* for the appellant in each case (Richard D. Patterson).

*John D. LaBelle,* with whom was *Dan E. LaBelle,* for the appellees (defendants in the first case).

*Richard F. Banbury,* for the appellee (plaintiff in second case).

SHEA, J. These cases arise out of proceedings of the Council on Probate Judicial Conduct established pursuant to General Statutes § 45-11d concerning the alleged misconduct of the respondent, Richard D. Patterson, judge of probate for the district of Branford, in purchasing real property from an estate being settled in his court and in subsequently approving the final account of the executor of that estate. In the first case, Docket No. 13691, the respondent sought to enjoin the council from conducting a hearing on these charges of misconduct to be held pursuant to General Statutes § 45-11f.[1] He claimed that the council's preliminary finding of probable cause was flawed by its alleged failure to comply with the requirement of General Statutes § 45-11e (e)[2] that a judge must be notified within

[1] "[General Statutes] Sec. 45-11f. HEARING. If a preliminary investigation indicates that probable cause exists that the judge is guilty of judicial conduct under section 45-11e, the council shall hold a hearing concerning the conduct or complaint. All hearings held pursuant to this section shall be open. The council shall make a record of all proceedings pursuant to this section. The council shall, not later than fifteen days after the close of such hearing, publish its findings together with a memorandum of its reasons therefor. Any judge of probate who is under investigation and who appears before the hearing shall be entitled to counsel, shall be entitled to present evidence, and shall have the right to cross-examine witnesses."

[2] "[General Statutes] Sec. 45-11e. DUTIES AND POWERS OF COUNCIL RE COMPLAINTS AGAINST PROBATE JUDGES. (a) The council on probate judicial conduct shall investigate every written complaint brought before it alleging conduct of judges of probate which may violate any law or canon of ethics applicable to judges of probate, or failure to perform properly the duties of the office, or conduct prejudicial to the impartial and effective administration of justice which brings the judicial office in disrepute, or

three days after termination of its investigation as to whether probable cause has been found. The respondent also relied upon the alleged failure of the council

final conviction of a felony or of a misdemeanor involving moral turpitude, or disbarment or suspension as an attorney at law, or the wilful failure to file a financial statement or the filing of a fraudulent financial statement required under section 45-11j. In making any such investigation the council may use the services of the division of state police within the department of public safety, or any chief inspector, inspector or investigator in the division of criminal justice, or may engage the services of private investigators if it deems such services necessary.

"(b) If the complaint filed involves the judge of probate who is a member of the council, the judge shall be disqualified from acting in his capacity as a council member in the investigation and hearing on the matter and a judge of probate shall be appointed to act in his stead by the president-judge of the Connecticut probate assembly.

"(c) The council may engage the services of legal counsel who shall direct any investigation ordered by the council. Such counsel may conduct the examination of witnesses at any hearing held under section 45-11f, present any evidence deemed relevant, cross-examine witnesses presented by any person and perform such other duties as the council deems necessary for the conduct of its business.

"(d) The council shall not later than five days after receipt of such complaint or motion of the council notify by registered or certified mail any judge against whom such complaint is filed or motion is made and a copy of such complaint or motion shall accompany such notice. The council shall also notify the complainant of its receipt of such complaint not later than five days thereafter. Any investigation to determine whether or not there is probable cause that judicial conduct under subsection (a) of this section has occurred shall be confidential and any individual called by the council for the purpose of providing information shall not disclose his knowledge of such investigation to a third party unless the judge requests that such investigation and disclosure be open. The judge shall have the right to appear and be heard and to offer any information which may tend to clear him of probable cause to believe he is guilty of judicial conduct under subsection (a) of this section. The judge shall also have the right to be represented by legal counsel and examine and cross-examine witnesses.

"(e) The council shall, not later than three business days after the termination of such investigation, notify the complainant and the judge that the investigation has been terminated and whether probable cause has been found that judicial conduct under subsection (a) has occurred. If the council finds that judicial misconduct under subsection (a) of this section has not occurred, but the judge has acted in a manner which gives the appearance of impropriety or constitutes an unfavorable judicial practice, the council may issue an admonishment to the judge recommending a change in judicial conduct or practice."

to comply with certain provisions of § 45-11e (d).[3] The trial court rendered judgment for the council in that action, and the respondent has appealed. In the second case, Docket No. 13719, the respondent has appealed to this court pursuant to General Statutes § 45-11g (b)[4] from the recommendation of the council,

---

[3] The respondent claims that, because he was not given the opportunity, before announcement of the probable cause finding, to examine certain documents obtained from the council's investigation following the hearing pursuant to General Statutes § 45-11e (d), his rights of cross-examination under this section as well as his parallel constitutional rights were violated.

[4] "[General Statutes] Sec. 45-11g. REPORT OF COUNCIL'S FINDINGS. ADMONISHMENT; PUBLIC REPRIMAND; PUBLIC CENSURE; IMPEACHMENT; EXONERATION. (a) The council shall, after the hearing provided under section 45-11f, prepare a report of its investigation and a recommendation as to whether the judge of probate investigated should be publicly reprimanded, publicly censured or exonerated of the allegations of the complaint. If the council finds that judicial conduct under subsection (a) of section 45-11e has not occurred, but the judge has acted in a manner which gives the appearance of impropriety or constitutes an unfavorable judicial practice, the council may issue an admonishment to the judge recommending a change in judicial conduct or practice.

"(b) If public reprimand or public censure is recommended, the chairman shall prepare and forward the reprimand or censure in writing to the judge of probate being reprimanded or censured, signing the reprimand or censure as chairman of the council. A judge may, within twenty days after receiving notice of reprimand or censure by the council, appeal to the supreme court of Connecticut. A judge filing an appeal shall give notice of its filing to the council before the expiration of time for filing of an appeal. The council shall, within two weeks following receipt of notice of an appeal, file a finding of fact and conclusions therefrom. A copy of the reprimand or censure shall be furnished the chief justice, the chief court administrator, the probate court administrator, the president-judge of the Connecticut probate assembly, the town clerk or clerk in each town in the district served by such judge of probate and the complainant.

"(c) If, in the judgment of the council, the facts so warrant, it may recommend to the house of representatives the institution of impeachment proceedings.

"(d) If the council exonerates a judge of probate, a copy of the proceedings and report of the council shall be furnished to the judge, the probate court administrator and the complainant.

"(e) Except as provided in subsections (d) and (e) of section 45-11e, all decisions of the council shall be public record and shall be available for inspection at the office of the probate court administrator."

issued after completion of a hearing on the merits of the misconduct charges, that the respondent be publicly reprimanded for violation of certain canons of the Code of Probate Judicial Conduct.

The respondent does not challenge as unsupported by the evidence any of the factual findings of the council as set forth in its report. On April 21, 1979, Mary G. Williams died in the town of Branford and the executor named in her will, John Resnick, an attorney, proceeded to file the documents necessary to settle the estate in the probate district of Branford, of which the respondent was judge. An inventory of the estate assets, filed on December 5, 1979, included real estate known as 75 Cedar Street having an appraised value of $55,000. Under the will, which incorporated by reference the powers of a fiduciary set forth in General Statutes § 45-100e (2) of our Fiduciary Powers Act, Resnick, as executor, was authorized to sell this property without first obtaining probate court approval. He proceeded to list 75 Cedar Street for sale with an asking price of $95,000.

In May, 1980, a Realtor brought this property to the attention of the respondent and George Brencher, who were partners doing business under the trade name, "1893 Company" Acting in the name of the partnership, they made an initial offer to purchase the property for $75,000. After some negotiations, they increased their offer to $80,000, which the executor and the heirs accepted. There was no indication that this offer was unfair in relation to the actual market value of the property. Two of the heirs testified that the price was greater than expected. On December 15, 1980, the executor conveyed the property to the partnership under its trade name, and also filed in the Probate Court a return of sale for the property. Part of the money used to pay for the property was obtained through a mortgage loan.

On May 5, 1981, the executor filed an administration account in which the proceeds received from the sale of 75 Cedar Street were included with other assets of the estate, and in which all payments from the estate were also listed. A decree approving this account and ordering distribution to the legatees pursuant to the will was issued by the respondent on June 4, 1981.

On January 16, 1987, Carl V. Pantaleo, an attorney who had unsuccessfully contested with the respondent for the office of judge for the probate district of Branford in the November, 1986 election, sent a letter to the council alleging various acts of misconduct on the part of the respondent, including his purchase of 75 Cedar Street as a partner in 1893 Company. When requested by the council on February 9, 1987, to file a formal complaint pursuant to its rules, however, Pantaleo failed to respond. On June 2, 1987, the council received a complaint against the respondent from Todd Bainer, an attorney who had been Pantaleo's campaign manager in his unsuccessful attempt to defeat the respondent in the November, 1986 election. This complaint referred, inter alia, to the purchase of 75 Cedar Street from the estate of Mary G. Williams during settlement of the estate in the Probate Court over which the respondent presided.

The council notified the respondent by a letter dated June 22, 1987, of the complaint filed against him and advised him that an "investigation" would be held on July 24, 1987, to "consider" the complaint. This hearing was rescheduled for September 18, 1987. The respondent appeared at that time with his attorney, but offered no evidence. After completing its investigation, the council on October 20, 1987, issued a report finding probable cause of misconduct only with respect to the 75 Cedar Street transaction. With the assistance of its attorney, the council prepared a bill of specifications, setting forth the details of the purchase of real

estate from the Williams' estate while it remained under the jurisdiction of the respondent's court and charging him on the basis of that transaction with violations of several canons of the Code of Probate Judicial Conduct. Following a hearing pursuant to § 45-11f on these charges, the council on June 13, 1989, rendered its decision finding that the respondent had violated canons 2.1, 3.3.01 (d) (ii), 3.4 and 5.3.01 of the Code of Probate Judicial Conduct[5] and recommended that he be publicly reprimanded pursuant to § 45-11g (a).

I

In the first case, in which the respondent attempted to enjoin the council from proceeding further because

---

[5] These canons of the Code of Probate Judicial Conduct are as follows: "[Canon] 2.1. A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."

"[Canon] 3.3.01. A judge should disqualify himself in a proceeding pending in his own court in which his impartiality might reasonably be questioned, including but not limited to instances where . . .

"d. to act in connection with such proceeding would give the appearance of impropriety when there is so near a relationship to him of a person who . . .

"ii. has a financial or other interest in the subject matter in controversy that could be substantially affected by the outcome of the proceeding. . . ."

"[Canon] 3.4. Remittal of Disqualification.

"Except as provided in Gen. Stat. § 45-8, a judge disqualified by the terms of Canon 3.3.01.c or Canon 3.3.01.d may, instead of withdrawing from the proceeding, disclose the basis of his disqualification. If, based on such disclosure, the parties in interest and lawyers, independently of the judge's participation, all agree in writing that the judge's relationship is immaterial or that his financial interest is insubstantial, the judge is no longer disqualified, and may participate in the proceeding. The agreement, signed by all parties in interest and lawyers, shall be incorporated in the record of the proceeding."

"[Canon] 5.3.01. A judge should refrain from financial and business dealings that tend to reflect adversely on his impartiality, interfere with the proper performance of his judicial duties, or exploit his judicial position."

The respondent's brief contends that he violated none of these canons, without discussion of them separately.

of alleged improprieties in the conduct of the investigation that preceded its finding of probable cause, the council claims that the issues have become moot because the proceedings to be enjoined have now been completed, culminating after a hearing on the merits in its recommendation for a reprimand. We agree that the issues in the first case are moot.

The only basis alleged in the complaint for the inadequacy of the remedy at law provided by an appeal pursuant to § 45-11g (b) from the council's recommendation, an essential requirement for injunctive relief, is that the respondent would be exposed to a public hearing without a proper finding of probable cause, unless further proceedings were halted. Section 45-11e (d) provides that "[a]ny investigation to determine whether or not there is probable cause" to believe that judicial misconduct has occurred "shall be confidential" until the preliminary investigation has indicated that probable cause exists. Section 45-11f provides that, after probable cause has been found, the hearing on the merits of the complaint "shall be open."

These statutory provisions, requiring confidentiality during the investigatory stage of the proceeding, can no longer be implemented, even if we were to overturn the judgment of the trial court that there was no merit to the respondent's claim that his statutory and constitutional rights had been violated. Once pierced, the veil of confidentiality cannot be restored. This court can grant no effective relief to the respondent from the publicity that has followed the finding of probable cause by the council, whether or not that finding may be infirm. "It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow." *Reynolds* v.

*Vroom,* 130 Conn. 512, 515, 36 A.2d 22 (1944); see also *Sobocinski* v. *Freedom of Information Commission,* 213 Conn. 126, 134–35, 566 A.2d 703 (1989).

The respondent, in response to the council's claim of mootness, does not maintain that the relief he sought by way of an injunction is now feasible, but maintains that this case falls within a recognized exception to the mootness doctrine, when a case is "capable of repetition, yet evading review." *Southern Pacific Terminal Co.* v. *ICC,* 219 U.S. 498, 515, 31 S. Ct. 279, 55 L. Ed. 310 (1911); see *Weinstein* v. *Bradford,* 423 U.S. 147, 148–49, 96 S. Ct. 347, 46 L. Ed. 2d 350 (1975). Although the record indicates that the respondent did exhaust available procedures for preserving his statutory right to confidentiality by seeking a stay of the trial court judgment, his efforts to bring this appeal within the exception founder upon two of the factors we have regarded as relevant to its application: (1) the public importance of the question presented; and (2) the likelihood that *this respondent* will again be subject to a similar proceeding in which the same issues will be presented. *Sobocinski* v. *Freedom of Information Commission,* supra, 135–36; *Shays* v. *Local Grievance Committee,* 197 Conn. 566, 572–74, 499 A.2d 1158 (1985).

The factual basis for the issues the respondent has raised in the first case is a statement made by the chairman of the council at the conclusion of the hearing held pursuant to § 45-11e (d), at which the respondent had the "right to appear and be heard and to offer any information which may tend to clear him of probable cause to believe he is guilty of judicial [misconduct]," as well as the "right to be represented by legal counsel and examine and cross-examine witnesses." The chairman declared: "All right. The council will deliberate, we will make a decision and the parties will be notified." The respondent claims that this statement signified the termination of the investigation, thus triggering the three

day limitation following such termination allowed by § 45-11e (e) for notifying a judge whether probable cause has been found. We agree with the trial court that the respondent's assumption that the statement of the chairman marked the end of the investigation was unwarranted and that the issues predicated thereon have no merit. More fundamentally, however, the issue of the proper interpretation of the chairman's remarks can hardly be deemed of public importance. Nor is there sufficient likelihood that this factual predicate for the issues raised will be repeated with respect to any judge, let alone the respondent. Accordingly, we conclude that the issues are moot and that the appeal in the first case must be dismissed.

## II

In the second case, in which the respondent has appealed directly to this court pursuant to § 45-11g (b) from the council's recommendation for a public reprimand, he claims that its recommendation should be rejected on four grounds: (1) the probable cause finding was defective for the same reasons advanced in the first case; (2) the report of the council does not indicate whether its findings were made on the basis of clear and convincing evidence; (3) the canons of the Code of Probate Judicial Conduct relied upon by the council are too vague to inform a judge adequately of what is prohibited, and failed to provide sufficient notice to the respondent that his participation in the purchase of 75 Cedar Street constituted judicial misconduct; and (4) some members of the council were biased against the respondent as indicated by their remarks at the public hearing.

## A

In this case we need not decide whether a defect in the probable cause phase of the proceedings that has had no impact upon the ultimate finding of judicial mis-

conduct following a hearing on the merits pursuant to § 45-11f would warrant setting aside that finding. See *State* v. *Boyd,* 214 Conn. 132, 135–36, 570 A.2d 1125 (1990); *State* v. *McPhail,* 213 Conn. 161, 170, 567 A.2d 812 (1989); *State* v. *Mitchell,* 200 Conn. 323, 338, 512 A.2d 140 (1986). We leave that question for another time when the necessary predicate of a flawed probable cause finding is presented.

As mentioned in Part I, the basis for the respondent's claim concerning the probable cause finding is the alleged failure of the council to comply with the provision of § 45-11e (e) requiring that a judge be notified of a finding of probable cause "not later than three business days after the termination of such investigation." Under the respondent's view that the investigation ended on September 18, 1989, when the chairman remarked that the council would "deliberate . . . make a decision and the parties will be notified," the council's October 20, 1989 report, finding probable cause, was about one month late, in violation of § 45-11e (e).

We have previously indicated that we agree with the trial court that there is no merit in the respondent's claim that the investigation terminated on September 18, 1989. The hearing concluded on that date was for the purpose of providing the respondent "the right to appear and be heard and to offer any information which may tend to clear him of probable cause to believe he is guilty of judicial [misconduct]," in accordance with § 45-11e (d). There is no restriction on the power of the council to continue its investigation after such a hearing. The chairman's remark cannot reasonably be deemed to signify the end of the investigation, nor could that phase of the proceeding be closed by any remark of the chairman, but only by vote of the council. In providing an opportunity for the respondent to be heard, the statute does not imply that the investiga-

tion must be closed once the § 45-11e (d) hearing has been completed. The council, in fulfillment of its duty, would ordinarily require an opportunity to investigate further any information furnished at the hearing. We reject the respondent's claim of an infirmity in the council's finding of probable cause.

## B

The respondent claims that there is no indication in the record of the proceedings that the council made its determination of judicial misconduct on the basis of clear and convincing evidence, the standard this court implicitly approved in *Council on Probate Judicial Conduct re: James H. Kinsella*, 193 Conn. 180, 190-91, 476 A.2d 1041 (1984). An express articulation that such a standard was employed by the council, while commendable, is not, however, essential. The fundamental issue is whether the facts found by the council, upon which it based its conclusions, are supported by evidence satisfying the appropriate standard.

The respondent has not attacked any of the factual findings of the council, but only its conclusion of judicial misconduct. That conclusion, which the council drew from the undisputed subordinate facts found, therefore, is supported by clear and convincing evidence, if it was reasonable. The absence of any reference in its report to the standard of proof used by the council is thus of no consequence.

## C

The claim of vagueness that the respondent directs at the canons of probate judicial conduct is based upon the absence of any express prohibition against the purchase of real estate by a probate judge from an estate being settled in his court. He also relies upon a concession made by the attorney for the council that "there was no malicious or intentional act by the judge," and

upon uncontroverted testimony that the executive committee of the assembly of probate judges had once overruled its ethics committee's opinion that such a transaction was a violation of the code.

In finding the respondent guilty of misconduct, the council relied primarily upon Canon 3.3.01, requiring that "[a] judge should disqualify himself in a proceeding pending in his own court in which his impartiality might reasonably be questioned . . . . " Since the canons are applicable only to judges, who are generally more qualified than lay persons to comprehend their import, we conclude that this canon provided sufficient notice to the respondent, a practicing attorney as well as a probate judge, that his participation in the purchase of 75 Cedar Street from the Williams estate was a ground upon which his impartiality in approving the final account of the executor of that estate might reasonably be questioned.

It is the responsibility of a probate judge in approving a final account to review the various transactions disclosed therein, including the sales of real estate or other assets of an estate, to ascertain whether a fair price was obtained for them. "[I]n the settlement of the account the court reviews all that has transpired in the settlement of the estate and passes upon the propriety of the doings disclosed." 2 W. Locke & P. Kohn, Connecticut Probate Practice § 559; see *Edmond* v. *Canfield,* 8 Conn. 87, 90 (1830). The respondent could hardly have performed that duty with respect to the sale of 75 Cedar Street because of his personal interest as a participant in that transaction. "[N]o person should be a judge in his own cause." *Dacey* v. *Connecticut Bar Assn.,* 184 Conn. 21, 24–25, 441 A.2d 49 (1981). Furthermore, in approving a final account, a probate judge must decide whether the amount charged by the executor for his services is reasonable. It would not be unreasonable to question the

impartiality of the respondent in making that determination with respect to an executor with whom he had negotiated successfully for the purchase of property at a price less than the original asking price.

The possible reliance of the respondent on the action of the executive committee of the probate assembly in overruling the view of its ethics committee on the impropriety of a probate judge's involvement in such a transaction is an extenuating circumstance, but does not excuse his violation of the code any more than ignorance of the law provides a defense to a crime. The council may well have considered this factor in deciding to impose the least severe sanction prescribed by the statute for judicial misconduct violating § 45-11e (a), a public reprimand. General Statutes § 45-11g (a). Scienter is not essential for the occurrence of an ethical violation. Judges no less than lawyers are chargeable for deviations from the codes governing their conduct, even though the application of the canons to particular circumstances may not be readily apparent. See *Grievance Committee* v. *Rottner,* 152 Conn. 59, 65–66, 203 A.2d 82 (1964). Having found that judicial misconduct in violation of the judicial canons of ethics had occurred, the council was authorized to impose the sanction of a public reprimand, despite the absence of any evidence that the beneficiaries of the estate were actually harmed and their own testimony approving the respondent's conduct.

### D

The claim of bias that the respondent directs against council members has no support in the record. During the examination of a witness at the hearing, the council chairman asked a question for the purpose of clarifying the answer given to his previous question.[6] The

---

[6] "Chairman Sponzo: The fact that he was a Judge of Probate, did that cause the bank to be more receptive to granting him a loan on this property?

respondent apparently viewed this involvement of the chairman in the questioning of the witness to indicate bias, because he moved immediately for disqualification of the chairman, a motion which the members of the council denied. This ruling was correct. The claim that the question asked by the chairman indicated bias on his part is frivolous.

The respondent also refers to a colloquy between his attorney and members of the council during the course of argument of a motion to dismiss the proceedings for failure of the attorney for the council to establish a prima facie case, which was made at the conclusion of the evidence presented by its attorney. We have reviewed the lengthy discussion to which the respondent's brief refers concerning the specific canons of the code alleged to have been violated. The only remark by any council member that may arguably have been

---

"The Witness: I would think it would have nothing to do with it whatsoever. You know, we had no knowledge—I don't think it had any bearing on it at all.

"Chairman Sponzo: Were you going to say you didn't have any knowledge that he was Judge of Probate?

"The Witness: No.

"Mr. Frechette: Your Honor, he's answered the question. I think your Honor is boring in and I would object to it and ask that you not do that.

"Chairman Sponzo: You may object and the objection is noted.

"Mr. Frechette: I would like to have a ruling on it. I don't think this is proper at all. The witness has said the fact that this individual was Judge of Probate had nothing to do with it at all. The Council has a very able lawyer here and I don't need two adversaries. It's not fair, and, quite frankly, your Honor, I have to ask you to disqualify yourself on the basis of that. It's totally unfair, and if this was a criminal case we would be out the door with that. Not fair at all.

"Chairman Sponzo: Mr. Frechette, is there an objection?

"Mr. Frechette: There is. I object to your Honor asking the qustion the way you've asked it of this witness, who I've never talked to and is here under subpoena, who has responded to it and your Honor is badgering about that, trying to put words in his mouth, and it's unfair and I ask you to disqualify yourself.

"Chairman Sponzo: Mr. Frechette, the Chair has consulted with members of the Council. Your request that I be disqualified is denied."

inappropriate was made directly in response to an inquiry of counsel for the respondent.[7] At worst, the remark merely indicates prematurely the member's view upon the legal principles that were under discussion. It cannot reasonably be interpreted to indicate personal bias against the respondent.

We conclude that the respondent's claim that he was deprived of his fundamental right to have the charges against him "heard and determined by an impartial and unbiased agency"; *Huck* v. *Inland Wetlands & Watercourses Agency,* 203 Conn. 525, 536, 525 A.2d 940 (1987); has so little support in the record as to be frivolous. We affirm the council's findings of facts and its conclusions.

In the first case, the appeal is dismissed for mootness.

In the second case, the appeal is dismissed on the merits.

In this opinion the other justices concurred.

---

[7] "Mr. Frechette: Neither do I, and there is no evidence that what he did had anything to do with his judicial position. What did he do? Tell me what he did, Mr. Marsh, in his judicial position. Are you telling me he should not have approved the administration account? And if so, where's the evidence of it?

"Mr. Marsh: I did not say that. I said he should not have purchased real estate from this estate. And this I think says so, and it gives the reason why. And I think it's pretty clear, it's not difficult for me to understand.

"Mr. Frechette: You've decided the case without even hearing all the evidence, for Heaven's sake."