## IN RE HONORABLE HOWARD F. ZOARSKI
## (14589)

PETERS, C. J., CALLAHAN, BORDEN, KATZ and PALMER, Js.

Argued September 21—decision released November 2, 1993

*Roger J. Frechette,* with whom was *Matthew E. Frechette,* for the appellant (respondent).

*Donald B. Caldwell,* with whom, on the brief, was *F. Timothy McNamara,* for the appellee (judicial review council).

PETERS, C. J. This appeal challenges the propriety of the suspension of a judge of the Superior Court for judicial misconduct. Pursuant to General Statutes § 51-51*l*,[1] the judicial review council (council) charged that the respondent, Judge Howard F. Zoarski, had violated General Statutes § 51-51i (a) (1) and (2)[2] by engaging in judicial conduct that (1) demonstrated a wilful violation of canons 2 B and 3 C (1) (a) of the Code of Judicial Conduct, and (2) was prejudicial to the impartial and effective administration of justice. Although

---

[1] General Statutes § 51-51*l* provides in relevant part: "INVESTIGATION OF CONDUCT OF JUDGE, COMPENSATION COMMISSIONER OR FAMILY SUPPORT MAGISTRATE. (a) Except as provided in subsection (d), the judicial review council shall investigate every written complaint brought before it alleging conduct under section 51-51i, and may initiate an investigation of any judge, compensation commissioner or family support magistrate if (1) the council has reason to believe conduct under section 51-51i has occurred . . . ."

[2] General Statutes § 51-51i provides in relevant part: "GROUNDS FOR REMOVAL, SUSPENSION AND CENSURE. (a) In addition to removal by impeachment and removal by the governor on the address of two-thirds of each house of the general assembly as provided in the Connecticut constitution, a judge shall be subject, in the manner and under the procedures provided in this chapter to censure, suspension or removal from office for (1) conduct prejudicial to the impartial and effective administration of justice which brings the judicial office in disrepute, (2) wilful violation of section 51-39a or any canon of judicial ethics . . . ."

only six members of the council found that the first charge had been established by clear and convincing proof, all nine members of the council who heard the complaint found that the second charge had been so established. On the basis of the second charge,[3] the council suspended Judge Zoarski from exercising his duties as a judge of the Superior Court for a period of fifteen days. Judge Zoarski appealed to this court in accordance with General Statutes § 51-51r.[4] After a searching consideration of the merits of his claims, we dismiss Judge Zoarski's appeal.

The council made the following unchallenged findings of fact with respect to the second charge. Before becoming a judge, Judge Zoarski, a resident of Branford, was one of three partners in a partnership known as Ramzey Associates and was counsel for the partnership. The partnership owned land in Branford that abutted the Soffer poultry farm. Stuart Soffer, the complainant in these proceedings, has operated the Soffer family farm since 1977.

In or after 1977, several controversies arose between the partnership and the Soffer family, in part because the partnership sought to develop its property for a subdivision of homes. These disagreements concerned: (1) a claim by Joseph Soffer, Stuart Soffer's father, and Jacob Soffer, Stuart Soffer's uncle, that the Soffer family farm had a right-of-way over the partnership property; (2) a dispute about the compliance of improve-

---

[3] General Statutes § 51-51m provides in relevant part: "VOTE OF COUNCIL. FINDINGS TO BE INDEXED. (a) The judicial review council may take any action upon a majority vote of its members present and voting, except that any action to suspend a judge, compensation commissioner or family support magistrate for any period shall require the concurring vote of seven of its members."

[4] General Statutes § 51-51r provides in relevant part: "APPEALS, RULES. Any judge . . . aggrieved by any decision of the judicial review council may appeal the decision to the supreme court in accordance with such procedure for the appeal as the supreme court shall adopt by rule."

ments to structures on the Soffer farm with the building and zoning codes; and (3) a complaint by Stuart Soffer about the compliance by the partnership with inland wetlands regulations. In his capacity as counsel to the partnership, Judge Zoarski attended at least two court-ordered inspections of the partnership and the Soffer family farm properties at which members of the Soffer family, including Stuart Soffer, were present and identified as family members. Judge Zoarski, as counsel, also attended an inland wetlands hearing at which Stuart Soffer identified himself by name, and by relationship with other members of the Soffer family, as the person challenging the impact of the partnership's development on wetlands in the area.

On July 30, 1990, the Branford police submitted to Judge Zoarski an arrest warrant that charged Stuart Soffer with littering. The affidavit accompanying the warrant recited that the alleged littering consisted of drippings of chicken manure and feathers from a "Soffer poultry farm truck" onto a public road. The affidavit also described the location of the Soffer poultry farm. The maximum fine for the charge of littering was $250. Judge Zoarski signed the arrest warrant and, sua sponte, added a bond of $1000.[5]

On the basis of this factual record, the council determined that there was clear and convincing evidence that Judge Zoarski, when he signed the warrant, "knew or should have know[n of] the history of contentious relations and litigation with the Soffers and their poultry farm." He was, therefore, required "to disqualify himself from any participation in the Soffer arrest." Further, "[t]he respondent also knew or should have known that the requirement of the $1000 bond would have required Stuart Soffer to spend some time in the Branford jail pending arrangements for the bond."

[5] The charges against Stuart Soffer were subsequently dismissed.

The council concluded that Judge Zoarski's failure to disqualify himself had placed his impartiality and judgment into question and that he had thereby subjected himself to a claim of prejudice. The council unanimously held that, in the circumstances of this case, Judge Zoarski's failure to disqualify himself was "conduct prejudicial to the impartial and effective administration of justice which brings the judicial office in disrepute."[6] General Statutes § 51-51i (a) (1). Accordingly, the council ordered his suspension for fifteen days.

Judge Zoarski challenges the validity of his suspension on six grounds. He maintains that the council: (1) lacked sufficient evidence to support a finding of judicial misconduct with respect to either of the charges against him; (2) lacked the authority to render a judgment of judicial misconduct without the presentation of expert evidence about the relevant standards; (3) was compelled to dismiss the proceedings against him because Stuart Soffer, in violation of the confidentiality requirement of General Statutes § 51-51l (a),[7] had publicly discussed the charges that the council was considering;

---

[6] In light of the council's unanimous determination of misconduct under this charge, we need not decide whether the council would have had the authority to suspend the respondent with respect to his alleged misconduct under the first charge, which only six members of the council found to have been proved. See General Statutes § 51-51m.

[7] General Statutes § 51-51l provides in relevant part: "INVESTIGATION OF CONDUCT OF JUDGE, COMPENSATION COMMISSIONER OR FAMILY SUPPORT MAGISTRATE. (a) . . . . Any investigation to determine whether or not there is probable cause that conduct under section 51-51i has occurred shall be confidential and any individual called by the council for the purpose of providing information shall not disclose his knowledge of such investigation to a third party prior to the decision of the council on whether probable cause exists, unless the respondent requests that such investigation and disclosure be open, provided information known or obtained independently of any such investigation shall not be confidential. . . ."

The respondent in this proceeding did not request "that such investigation and disclosure be open."

(4) violated Judge Zoarski's due process rights by adjudicating the charges against him without first having enacted comprehensive regulations as required by General Statutes § 51-51k (i);[8] (5) improperly permitted portions of Judge Zoarski's testimony at the probable cause hearing to be received into evidence in the public hearing; and (6) violated Judge Zoarski's due process rights by having the same council members determine probable cause and thereafter adjudicate the complaint against him. We disagree.

I

Judge Zoarski's first contention is that the council did not have clear and convincing evidence to support its finding that he had engaged in judicial misconduct. Although he challenges the sufficiency of the evidence on both of the charges against him, we need only decide the sufficiency of the evidence to sustain the second charge, i.e., that he had engaged in conduct that, in violation of § 51-51i (a) (1), was "prejudicial to the impartial and effective administration of justice [so as to bring] the judicial office in disrepute."[9]

Well established principles govern this court's review of a decision of the council that a Superior Court judge has engaged in misconduct warranting judicial discipline. "[O]ur review is not de novo. We cannot assess the credibility of witnesses. . . . Nonetheless, our review must take into account the risk that unfounded

---

[8] General Statutes § 51-51k provides in relevant part: "JUDICIAL REVIEW COUNCIL. . . .

"(i) REGULATIONS. The judicial review council shall adopt regulations in accordance with the provisions of chapter 54 to establish rules and procedures for the council in the discharge of its duties under this chapter and to provide standards for the identification of and procedures for the treatment of conflicts of interest for council members, which standards shall require that any professional or ethical codes of conduct shall apply to any professional member of the council subject to such codes of conduct."

[9] See footnote 6.

charges of judicial misconduct will impair society's interest in an independent judiciary. We must therefore depart from our normal rule of deference to fact-finding by trial courts and administrative agencies. We have a nondelegable responsibility, upon an appeal, to undertake a scrupulous and searching examination of the record to ascertain whether there was substantial evidence to support the council's factual findings." (Citations omitted.) *Council on Probate Judicial Conduct re: James H. Kinsella,* 193 Conn. 180, 192, 476 A.2d 1041 (1984).

Judge Zoarski attacks the findings of the council on the grounds that: (1) although he had been involved in litigation with Joseph Soffer and Jacob Soffer, Stuart Soffer had been neither a party to, nor a witness in, that litigation; (2) the three occasions on which Judge Zoarski had encountered Stuart Soffer had occurred more than eleven years prior to the signing of the arrest warrant; and (3) Judge Zoarski derived no personal or pecuniary gain from signing the arrest warrant. Judge Zoarski maintains that, if due consideration had been given to these additional facts, all of which were uncontested, the council could not reasonably have found, by clear and convincing evidence, that he had engaged in judicial misconduct. We disagree.

On the basis of the evidence before it, the council could reasonably have found that Judge Zoarski, during his prior encounters with members of the Soffer family, had ample occasion to learn that Stuart Soffer was the son and nephew of the members of the Soffer family with whom he had been in litigation. Judge Zoarski acknowledged, at the probable cause hearing held pursuant to § 51-51*l*,[10] that his examination of the war-

---

[10] General Statutes § 51-51*l* provides in relevant part: "INVESTIGATION OF CONDUCT OF JUDGE, COMPENSATION COMMISSIONER OR FAMILY SUPPORT MAGISTRATE. (a) Except as provided in subsection (d), the judicial review council shall investigate every written complaint brought before it alleg-

rant affidavit had disclosed a connection with the Soffer farm and that he had focused on the Soffer name sufficiently to determine that neither Joseph nor Jacob Soffer was directly involved. The council could also reasonably have concluded that Judge Zoarski should have recognized the name of the person on the arrest warrant as a close relative of Joseph and Jacob Soffer. Furthermore, Judge Zoarski does not claim that it would have been proper for him to have signed the arrest warrant if he had wilfully ignored actual knowledge about his prior adversarial encounters with Stuart Soffer.

Because Judge Zoarski should have known that he was dealing with an immediate member of the Soffer family in circumstances in which his impartiality could reasonably have been called into question, the council could reasonably have concluded that he had engaged in judicial conduct that was "prejudicial to the impartial and effective administration of justice [so as to bring] the judicial office in disrepute." In contrast to § 51-51i (a) (2), prejudicial judicial conduct under § 51-51i (a) (1) does not require proof of a wilful violation of the canons of judicial ethics. "Scienter is not essential for the occurrence of an ethical violation. Judges . . . are chargeable for deviations from the [statutes] governing their conduct, even though the application of the [statutes] to particular circumstances

---

ing conduct under section 51-51i, and may initiate an investigation of any judge . . . if (1) the council has reason to believe conduct under section 51-51i has occurred or (2) previous complaints indicate a pattern of behavior which would lead to a reasonable belief that conduct under section 51-51i has occurred. . . . The judge . . . shall have the right to appear and be heard and to offer any information which may tend to clear him of probable cause to believe he is guilty of conduct under section 51-51i. The judge . . . shall also have the right to be represented by legal counsel and examine and cross-examine witnesses. . . .

"(c) If a preliminary investigation indicates that probable cause exists that the judge . . . is guilty of conduct under section 51-51i, the council shall hold a hearing concerning the conduct or complaint. All hearings held pursuant to this subsection shall be open. . . ."

may not be readily apparent." *Patterson* v. *Council on Probate Judicial Conduct,* 215 Conn. 553, 567, 577 A.2d 701 (1990). A judge acting in a judicial capacity may be found to have engaged in prejudicial judicial conduct, although his conduct was undertaken in subjective good faith, if the conduct "would appear to an objective observer to be not only unjudicial conduct but conduct prejudicial to public esteem for the judicial office." *Geiler* v. *Commission on Judicial Qualifications,* 10 Cal. 3d 270, 284, 515 P.2d 1, 110 Cal. Rptr. 201 (1973), cert. denied, 417 U.S. 932, 94 S. Ct. 2643, 41 L. Ed. 2d 235 (1974); *Papa* v. *New Haven Federation of Teachers,* 186 Conn. 725, 744–46, 444 A.2d 196 (1982). Furthermore, "[t]he fact that a judge receives no personal benefit, financial or otherwise, from his improper handling of a case does not preclude his conduct from being prejudicial to the administration of justice.[11] The determinative factors aside from the conduct itself, are the results of the conduct and the impact it might reasonably have upon knowledgeable observers." *In re Peoples,* 296 N.C. 109, 154, 250 S.E.2d 890 (1978), cert. denied sub nom. *Peoples* v. *Judicial Standards Commission of North Carolina,* 442 U.S. 929, 99 S. Ct. 2859, 61 L. Ed. 2d 297 (1979). Even in the absence of actual bias, a judge must disqualify himself in any proceeding in which his impartiality might reasonably be questioned, because the appearance and the existence of impartiality are both essential elements of a fair exercise of judicial authority. *State* v. *Santangelo,* 205 Conn. 578, 602, 534 A.2d 1175 (1987).

---

[11] The statutory grounds for the finding of judicial misconduct contained in General Statutes § 51-51i (a) are broader than those that governed disqualification at common law, under which a judge was disqualified for a direct pecuniary interest and for nothing else. *Dacey* v. *Connecticut Bar Assn.,* 184 Conn. 21, 24, 441 A.2d 49 (1981). Disqualification on the grounds of relationship or pecuniary interest is now governed by General Statutes § 51-39.

Applying these standards, courts in other jurisdictions have concluded that a judge engages in judicial misconduct prejudicial to the administration of justice when his exercise of judicial authority appears to have been influenced by a special relationship between the judge and the litigant. See, e.g., *Matter of Hendrix,* 145 Ariz. 345, 348–49, 701 P.2d 841 (1985) (judge conferred special visitation privileges on his court clerk); *In re Nowell,* 293 N.C. 235, 251–52, 237 S.E.2d 246 (1977) (judge ordered ex parte dispositions of pending criminal cases); *In re Crutchfield,* 289 N.C. 597, 604, 223 S.E.2d 822 (1975) (judge granted ex parte application for limited driving privileges). These cases support the council's conclusion that, in the present circumstances, Judge Zoarski engaged in prejudicial judicial conduct under § 51-51i (a) (1) when he signed the arrest warrant for Stuart Soffer and added a $1000 bond requirement thereto.

## II

Judge Zoarski's remaining claims on appeal challenge the manner in which the council adjudicated the charges against him. These claims warrant less extended discussion. None of them is persuasive.

Judge Zoarski maintains that the council had no authority to adjudicate the charges against him without expert evidence on the standard to which judges must conform their conduct. He relies on *Levinson* v. *Board of Chiropractic Examiners,* 211 Conn. 508, 525, 560 A.2d 403 (1989), and the cases therein cited, in which we held that an administrative board must have expert testimony on the standards of professional conduct unless the board that hears the matter itself consists of a majority of experts. *Levinson* did not, however, require the judicial review council to receive expert testimony. The membership of the council included three lawyers as well as three judges, and

together these members constituted a majority of the council. General Statutes (Rev. to 1991) § 51-51k (a).[12] It is reasonable to expect lawyers to have a special understanding of the ethical standards that govern judges. See *Patterson* v. *Council on Probate Judicial Conduct,* supra, 566. In addition, this court's searching review of a finding of judicial misconduct assures the application of proper standards in any particular case.

Judge Zoarski next contends that the council was required to dismiss the charges against him because of Stuart Soffer's improper public dislosures of the charges he had filed. It is arguable that such disclosures were inconsistent with § 51-51*l* (a), which provides for the confidentiality of investigations to determine "whether or not there is probable cause that conduct under section 51-51i has occurred . . . ."[13] The legislature has not, however, expressly imposed a sanction of dismissal of charges for a violation of § 51-51*l* (a). See *Donohue* v. *Zoning Board of Appeals,* 155 Conn. 550, 554–55, 235 A.2d 643 (1967). Because of the public interest in the proper disposition of charges of judicial misconduct, we will not infer that the legislature intended to make a complainant's noncompliance with § 51-51*l* (a) a basis for the automatic dismissal of ongoing judicial misconduct proceedings.[14] In the absence

---

[12] General Statutes (Rev. to 1991) § 51-51k provides in relevant part: "JUDICIAL REVIEW COUNCIL ESTABLISHED. (a) There is hereby established a judicial review council to be composed of the following members: (1) Three judges of the superior court, who are not also judges of the supreme court, elected by the members of the superior court, (2) three attorneys-at-law admitted to practice in this state who shall be appointed by the governor with the approval of the general assembly, and (3) five persons who are not attorneys-at-law or judges who shall be appointed by the governor and approved by the general assembly."

[13] See footnote 7.

[14] Judge Zoarski's invocation of the equitable principle of "clean hands" is unpersuasive. Although the proceedings before the council were initiated by the complainant, Stuart Soffer, the party in interest is the general public rather than Stuart Soffer personally. We have never applied the doc-

of allegation or proof that Stuart Soffer's public disclosures had any impact whatsoever on the fairness of the council's deliberations, dismissal of the charges was not required. See *Council on Probate Judicial Conduct re: James H. Kinsella,* supra, 201–204.

Judge Zoarski claims that the council violated his due process rights by conducting the proceedings against him without first having enacted comprehensive regulations as required by § 51-51k (i).[15] The failure to enact such regulations is conceded. An administrative agency's failure to comply with a statutory mandate to adopt procedural rules can be challenged, however, only by making a showing that some personal prejudice has resulted from the agency's failure to act. See *Goldberg* v. *Insurance Department,* 207 Conn. 77, 83–84, 540 A.2d 365 (1988), and cases cited therein; see also *Eagle Hill Corporation* v. *Commission on Hospitals & Health Care,* 2 Conn. App. 68, 78, 477 A.2d 660 (1984). Judge Zoarski does not contend that he failed to receive fair notice of the charges against him or that he was deprived of a meaningful opportunity to defend himself against these charges. Due process is inherently fact-bound and requires only "such procedural protections as the particular situation demands." *Morrissey* v. *Brewer,* 408 U.S. 471, 481, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972); *Mathews* v. *Eldridge,* 424 U.S. 319, 333–34, 96 S. Ct.

---

trine of "clean hands" as an absolute bar to judicial intervention. "The doctrine is not one of absolutes . . . . The maxim, being founded on public policy, may be relaxed on that ground . . . ." (Citations omitted.) *Cohen* v. *Cohen,* 182 Conn. 193, 204, 438 A.2d 55 (1980).

We need not decide in this case what consequences would follow an unauthorized disclosure of pending judicial disciplinary proceedings by a member of the council or by an agent of the council. *Council on Judicial Complaints* v. *Maley,* 607 P.2d 1180 (Okla. 1980), on which Judge Zoarski relies to urge dismissal in this case, involves the validity of interrogatories addressed to a disciplinary council, rather than a voluntary disclosure by a complainant.

[15] See footnote 8.

893, 47 L. Ed. 2d 18 (1976); *Council on Probate Judicial Conduct re: James H. Kinsella,* supra, 207–208. On the present record, Judge Zoarski has not established any prejudice, constitutional or otherwise, resulting from the council's noncompliance with § 51-51k (i).

Judge Zoarski maintains that the council's finding of misconduct cannot stand because the council improperly considered testimony that he had given at his probable cause hearing. He argues that this testimony was inadmissible hearsay, and could not be characterized as an admission, because the probable cause hearing was merely an investigatory proceeding and not a public hearing into the ultimate merits of the charges against him. In civil as well as in criminal cases, "[t]he words and acts of a party-opponent are generally admissible against him under the admission exception [to the hearsay rule]. See *O'Brien* v. *John Hancock Mutual Life Insurance Co.,* 143 Conn. 25, 29–30, 119 A.[2d] 329 (1955); *Cashman* v. *Terminal Taxi Co.,* 131 Conn. 31, 33, 37 A.2d 613 (1944); *Hubbard* v. *Schlump,* 106 Conn. 216, 219, 137 A. 644 (1927)." C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 11.5.1. We have not previously decided at what juncture a respondent becomes a party-opponent in a judicial misconduct proceeding.[16] We now hold that a hearing to determine probable cause is sufficiently adversarial to permit statements made by a respondent at that time to qualify as admissions for the purpose of a subsequent plenary adjudication of the merits of the charges of judicial misconduct. We therefore sustain the council's evidentiary ruling.

Finally, Judge Zoarski contends that the council violated his due process rights because of the different

---

[16] We confine our discussion to the admissibility of the words and acts of a party-opponent in adversarial proceedings because that is the way the parties have framed the issue. We, therefore, need not address the circumstances under which statements or conduct may qualify as admissions even though they precede adversarial proceedings.

roles that members of the council played during the various parts of the disciplinary proceedings against him. He maintains that it was unconstitutional for the members of the council to have conducted the investigatory hearing that led to a finding of probable cause and thereafter to have adjudicated the ultimate merits of the charges against him. Other courts that have considered this question have concluded that combining the investigatory and adjudicatory functions in professional disciplinary proceedings does not violate due process. See, e.g., *Withrow* v. *Larkin*, 421 U.S. 35, 47–55, 95 S. Ct. 1456, 43 L. Ed. 2d 712 (1975); *Halleck* v. *Berliner*, 427 F. Sup. 1225, 1243–44 (D.D.C. 1977); *In re Hanson*, 532 P.2d 303, 306 (Alaska 1975); *McCartney* v. *Commission on Judicial Qualifications*, 12 Cal. 3d 512, 522 n.7, 526 P.2d 268, 116 Cal. Rptr. 260 (1974); *In re Rome*, 218 Kan. 198, 204–205, 542 P.2d 676 (1975); *Nicholson* v. *Judicial Retirement & Removal Commission*, 562 S.W.2d 306, 309 (Ky. 1978); *In re Haggerty*, 257 La. 2, 12, 241 So. 2d 469 (1970); *In re Diener & Broccolino*, 268 Md. 659, 677–79, 304 A.2d 587 (1973), cert. denied, 415 U.S. 989, 94 S. Ct. 1586, 39 L. Ed. 2d 885 (1974); *In re Elliston*, 789 S.W.2d 469, 472 (Mo. 1990). Although the legislature might decide that public policy would better be served by a division of these functions, it has not yet done so.[17] Judge Zoar-

---

[17] The statutes on which Judge Zoarski relies as an expression of a contrary legislative policy are inapposite. The adjudicative proceedings before the judicial review council do not review the merits of the investigatory finding of probable cause. Such proceedings are therefore distinguishable from the legislative proscription contained in General Statutes § 51-183h, which prohibits a judge from presiding "at the hearing of any motion attacking the validity or sufficiency of any bench warrant of arrest which he has signed." Similarly, the adjudicative proceeding is not a new trial subsequent to a reversal of prior investigatory proceedings, and therefore does not implicate the policy of General Statutes § 51-183c, which disqualifies a judge from retrying a case over which he previously presided.

Rule 3.A of the ABA Model Rules for Judicial Disciplinary Enforcement (Discussion Draft July 15, 1993) recommends that the membership of a judicial conduct commission should be divided into separate investigative

ski has not shown actual prejudice from the conduct of the council's proceedings and therefore has not sustained his burden of establishing a due process violation. See *State* v. *Hayes,* 127 Conn. 543, 581–82, 18 A.2d 895 (1941).[18]

### III

Our searching review of the disciplinary proceeding against Judge Zoarski has been guided by the public policy that we must enforce. "The purpose of sanctions in cases of judicial discipline is to preserve the integrity and independence of the judiciary and to restore and reaffirm public confidence in the administration of justice. The discipline we impose must be designed to announce publicly our recognition that there has been misconduct; it must be sufficient to deter [the judge] from again engaging in such conduct; and it must discourage others from engaging in similar conduct in the future. Thus, we discipline a judge not for purposes of vengeance or retribution, but to instruct the public and all judges, ourselves included, of the importance of the function performed by judges in a free society. We discipline a judge to reassure the public that judicial misconduct is neither permitted nor condoned. We discipline a judge to reassure the citizens of [this state] that the judiciary of their state is dedicated to the prin-

panels and hearing panels. Under this proposal, no commission member would be involved both in deciding whether to file formal charges and in hearing the case on those charges.

[18] In *State* v. *Hayes,* 127 Conn. 543, 581–82, 18 A.2d 895 (1941), we observed: "Neither because the trial judge ordered the grand jury and presided throughout the grand jury proceedings and had passed on numerous preliminary motions, nor for any other reason, was he disqualified to preside at the trial; the eminent fairness and impartiality with which it was conducted effectually refutes any claim of bias or prejudice on his part. . . . [N]or does it appear that the defendants were in fact prejudiced in their defense by the court's rulings, and unless this is affirmatively shown there is no basis upon which the defendants can claim relief because of these rulings."

ciple that ours is a government of laws and not of men." *In re Kneifl,* 217 Neb. 472, 485–86, 351 N.W.2d 693 (1984). In its discharge of its responsibilities to protect the integrity of the judiciary, the council properly concluded that Judge Zoarski, in the circumstances of this case, violated these high standards by signing an arrest warrant and setting a bond for Stuart Soffer. Judge Zoarski's failure to disqualify himself constituted judicial misconduct that was "prejudicial to the impartial and effective administration of justice [so as to bring] the judicial office in disrepute."

The appeal is dismissed.

In this opinion the other justices concurred.