[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This administrative appeal arises from a final decision of the defendant, state elections enforcement commission ("commission"), issued on June 15, 2000, finding that the plaintiff, Carol D. Nichols, violated CT Page 15056 General Statutes § 9-333l (d)(1) by using public funds to print and mail materials to voters designed to bring about her reelection as commissioner for the Third Taxing District of the city of Norwalk. The decision orders the plaintiff to henceforth strictly comply with § 9-333l (d)(1), make restitution in the amount of $1,180.64 to the Third Taxing District and imposed an additional $500 civil penalty on the plaintiff.
The following facts are relevant to this appeal. In September of 1999, the plaintiff was an incumbent Third Taxing District commissioner for the city of Norwalk and a candidate for the Republican nomination for reelection to that office. (Return of Record ("ROR"), Item 34, Final Decision, ¶¶ 1, 4.) The Republican primary was held for this office on September 14, 1999 and the general election was held on December 2, 1999. (ROR, Item 34, Decision, ¶¶ 1, 4.) Prior to the Republican primary, the plaintiff was also nominated as a candidate for the Independent party; and, after losing in the Republican primary, she ran as an Independent candidate. (ROR, Item 10, Transcript of April 5, 2000 Hearing, p. 7; Item 13, Joint Exhibit No. 3.)
Within ninety days of the general election and on the day before the September 14, 1999 primary, the plaintiff authorized the printing and mailing of a two page, blue flyer to be inserted in the utility bills of ratepayers, entitled "The Word from the 3rd Taxing District of Norwalk, CT." (ROR, Item 34, Decision, ¶¶ 3, 8, 10-17, 19, 20, 22.) The flyer was authored by the plaintiff's husband, Charles William Nichols, and endorsed the plaintiff's reelection. (ROR, Item 34, Decision, ¶¶ 8, 24-28; Joint Exhibit No. 1.) In the plaintiff's capacity as chairperson of the Third Taxing District, she signed the checks for the printing and mailing of the flyers included in the utility bills of ratepayers. (ROR, Item 34, Decision, ¶ 11; Items 18-21, Claimant's Exhibits D-G.)
The flyer reads as follows:
 Third Taxing District Commission Chairman Carol D. Nichols announced at the Commission's August 9th meeting that because of the strength of the District's reserve accounts, the elimination of costly and un-needed office equipment, an arrangement with our insurance carriers to defray some of the legal costs incurred by the District, and an anticipated reduction in our cost of electricity, the District Electrical department was able to reduce electric charges by 1 cent per kilowatt hour, equal to more than 10%.
 `Over the years, because of our artificially high CT Page 15057 electric rates, our cash reserves have ballooned to far more than we need,' said Ms. Nichols. `This has often led to wasteful and sometimes questionable purchases which were justified because "we have lots of money." What this Commission purposes to do is to return that extra money to the ratepayers to whom it really belongs by lowering their bills beginning on October first'.
 `I want to stress that we are doing this because we can afford it. We have, for the first time ever, set aside money for catastrophic occurrences. We have made certain our pension money is secure, and we have paid our bills. This is not our money. It belongs to the ratepayers and is rightly being returned to them, said Ms. Nichols.'
(ROR, Item 11, Joint Exhibit No. 1.)
The flyer then continues on to state that the Republican party had refused to endorse the plaintiff for reelection and had instead tapped a newcomer as their candidate. The article stated that the plaintiff was challenging that decision in a primary election to be held on September 14, 1999 at the Marvin School.
A contested hearing was held on April 5, 2000 before commissioner Philip Serignese. Neither the plaintiff nor her husband attended the hearing. At the commencement of the hearing, commissioner Serignese introduced attorney Jeffrey Garfield as his legal and procedural advisor for the hearing. Attorney Garfield explained that his only role was to serve as legal advisor for the proceedings. Attorney Garfield also explained that he did not have a role in managing the investigation or supervising attorney Joan Andrews, the State's prosecuting attorney. The day before the commission's meeting to consider the commissioner's proposed decision counsel for the plaintiff, attorney Ridgely Brown, sent a written request for an extension of time to obtain a transcript of the hearing and to make an untimely objection to the proposed decision. (ROR, Item 31.) His sole objection to the proposed decision was that the proposed decision was signed by attorney Garfield on behalf of commissioner Serignese so that it was apparently drafted and signed for by the same staff that prosecuted the case (ROR, Item 31, p. 2.) After oral argument, the commission denied the plaintiff's request for extension of time. Commissioner Serignese stated that he asked attorney Garfield to sign his name to the proposed decision. Attorney Garfield stated that pursuant to state statute and regulation, his role was to advise the commissioner, and that he had no involvement in the CT Page 15058 supervision of attorney Andrews in the prosecution or investigation of the complaint and that there was a separation of functions within the office. He also stated that commissioner Serignese instructed him on writing the proposed decision and that commissioner Serignese reviewed the decision and discussed it with him. Attorney Andrews reported as an officer of the court that she did not confer with or report to attorney Garfield or commissioner Serignese regarding the facts or law in this case.
On June 14, 2000, the commission adopted the report of the hearing officer, as amended, as its final decision, finding that the plaintiff violated General Statutes § 9-333l (d)(1). The plaintiff appeals from this decision.
In the present appeal, the plaintiff argues: (1.) that the commission erred in finding that the plaintiff violated § 9-333l (d)(1) because the State failed to prove that the plaintiff had the specific intent to use the flyer to influence her pending reelection and (2.) that the attorney Garfield's role in the hearing violated the plaintiff's due process rights.
The standard of review in an administrative appeal is well settled. "Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . This so-called substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . It imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and provides a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action. . . . The United States Supreme Court, in defining substantial evidence in directed verdict formulation, has said that it is something less than the weight of the evidence, and that the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . ." (Brackets omitted; citations omitted; emphasis in original; internal quotation marks omitted.) Sweetman v. State Elections Enforcement Commission,249 Conn. 296, 331-32 (1999).
"The credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency. . . ." (Brackets omitted; citations omitted; internal quotation marks omitted.) CT Page 15059Sweetman v. State Elections Enforcement Commission, supra, 332. "In short, [the court] may not substitute [its] own conclusions for those of the commission. Rather, [the court] is limited to determining whether the commission's conclusions of fact were unreasonable arbitrary, illegal or an abuse of discretion." (Citations omitted; internal quotation marks omitted.) Id.
As to the plaintiff's first claim, the commission found, and there is substantial evidence in the record to support, that the plaintiff intended the publicly funded flyer to bring about her reelection in violation of General Statutes § 9-333l (d)(1). That statute provides: "No incumbent holding office shall, during the three months preceding an election in which he is a candidate for reelection or election to another office, use public funds to mail or print flyers or other promotional materials intended to bring about his election or reelection."
Intent, as the commission noted in its decision, can be inferred from the factual circumstances surrounding the matter at issue. See State v.Turner, 252 Conn. 714, 748 (2000). In this case, the commission found, and the court agrees, that the "actual content of the communication is the best measure of the communicator's intent to promote the reelection of the candidate. To require proof of specific subjective intent, as respondent claims, would render the statute unenforceable absent a signed confession from the respondent and would not fulfill the underlying policy objectives of the statute." (ROR, Item 34, Decision ¶ 30.)
Looking at the contents of the flyer, the court finds that the commission did not act illegally or in abuse its discretion in concluding that the plaintiff intended to promote her reelection through the subject flyer. Specifically, the flyer, on the front page, contained a four paragraph lead article entitled "Electric Rates Cut!", which devoted three of the four paragraphs to the plaintiff, having her announce a ten percent reduction in electric charges and extensively quoting her as to how the "extra money" rightfully belong to ratepayers. (ROR, Item 11, Joint Exhibit No. 1.) Mrs. Nichols is quoted as follows: "We have, for the first time ever, set aside money for catastrophic occurrences. We have made certain our pension money is secure, and we have paid our bills. This is not our money. It belongs to the ratepayers and is rightly being returned to them." (ROR, Item 11, Joint Exhibit No. 1.) The flyer also noted that the Republican party had refused to endorse the plaintiff for reelection and had instead tapped a newcomer as their candidate. The article stated that the plaintiff was challenging that decision in a primary election to be held on September 14, 1999 at the Marvin School. According to Mrs. Nichols: "Real reform is never popular with everyone."
The commission also found, and the record supports, that the plaintiff CT Page 15060 authorized her husband to write the subject newsletter and that he was her agent for that purpose. (ROR, Item 34, Decision, ¶ 22.) Furthermore, the plaintiff personally signed the checks to pay for the printing and mailing of the flyer accompanied with the utility bill. (ROR, Item 34, Decision, ¶ 11.)
Even if the commission had not made the factual findings of a specific intent contained in paragraph 30 of its decision, the plaintiff would still be liable under the statute. General Statutes § 9-333l (d)(1) prohibits an incumbent from (i) using public funds (ii) to mail or print flyers. It is proper and necessary to look at the face and language of the flyers to determine whether they were intended to bring about an election or reelection. Since the flyer is promotional of the plaintiff's reelection and she authorized the use of public funds for its printing and mailing within three months of the election, it is clear that the flyer was intended to bring about her reelection. The plaintiff's challenge to the commission's decision is without merit.
The plaintiff next challenges the commission's adjudicatory procedure. In her brief, it appears that the plaintiff is claiming that her due process rights were violated by attorney Jeffrey Garfield, who served as the legal and procedural advisor to the commissioner at the hearing. The plaintiff alleges that attorney Garfield stepped beyond his role to provide technical assistance to the commissioner at the administrative hearing by supervised the state's prosecuting attorney, Joan Andrews, by whispering in the commissioner's ear over plaintiff's objection, and by writing and signing the proposed decision of the commissioner.
The overwhelming evidence in the record indicates that the attorney Garfield properly performed his regulatory role of providing technical assistance to the hearing officer. The commission's regulations permit a member of the commission's staff to provide technical assistance to the commissioner and the commission, which includes the signing of documents on behalf of the commissioner. Regs., Conn. State Agencies §§9-7b-6 (b)(2), 9-7b-8 (b)(2).[1] As stated above, the administrative record indicates that attorney Garfield did nothing more than follow the relevant regulations. While the plaintiff claims that attorney Garfield engaged in misconduct at the underlying hearing, the plaintiff has failed to present any evidence to this court to substantiate his claim of procedural irregularities. See General Statutes § 4-183 (i).
The plaintiff has also failed to establish a due process violation nor has she offered any evidence establishing "actual prejudice" from the conduct of the proceeding both of which requirements are essential. In reZoarski, 227 Conn. 784 (1993). In order for the court to set aside an administrative decision, material prejudice to the complaining party must CT Page 15061 be shown. Jutkowitz v. Department of Health Services, 220 Conn. 86, 97
(1991). The plaintiff has failed to sustain her burden.
Based on the foregoing, the commission's decision is affirmed and the plaintiff's administrative appeal is dismissed.
Howard T. Owens, Jr., Judge