[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case comes to this court from the action of the Statewide Grievance Committee acting through its members duly appointed and qualified. The presentment is made to the court that James Driscoll of Weston, State of Connecticut is guilty of misconduct not occurring in the actual presence of the court, involving his character, integrity, and professional standing and conduct. In that complaint, substantially two matters are alleged as violative of the conduct prohibited by the Rules of Professional Conduct.
The matters concern Mario Demelis. In the first matter the claim is made concerning actions undertaken by Mr. Driscoll against Mr. Joseph McCarthy of Wilton, Connecticut for Mr. Demelis.
The second matter concerns a sale of premises known as 269 Thunderlake Road, Wilton, Connecticut to Peter T. and Linda Hood which involves a promissory note and mortgage deed for Mr. Demelis.
The court, in rendering this decision, has listened to the testimony of the witnesses and reviewed the briefs of the parties, their arguments, and all of the exhibits.
The complaint alleges that in 1988 Mr. Demelis hired Attorney Driscoll to represent him in a collection action against Joseph McCarthy of Wilton. Mr. Demelis claims that he had made requests for information which he did not receive. Mr. Demelis claims that Mr. Driscoll did not keep him reasonably informed between 1988 and 1994 about the status of the collection against Mr. McCarthy. Further, Mr. Demelis asserts he did not receive any of the money sought to be collected from Joseph McCarthy. CT Page 3195
Statewide Grievance Committee v. Whitney, 227 Conn. 829, 838
(1993), held "in presentment proceedings, the Statewide Grievance Committee must prove by clear and convincing evidence that the attorney misconduct it alleges has occurred." Therefore, the burden of proof is on the Statewide Grievance Committee to prove the claim against Attorney Driscoll by clear and convincing evidence.
Mr. Driscoll's testimony, which the court finds to be most credible, indicates that he only discussed the McCarthy matter in the most limited way. The court finds that Mr. Driscoll was never retained to bring an action against Mr. McCarthy and, in fact, never did bring any action against Mr. McCarthy. Mr. Driscoll remembers an informal conversation with Mr. Demelis concerning the closing. That Mr. Demelis was paid for the house but there was a claim of extras. The discussion was that Mr. Demelis and Mr. McCarthy were going to settle "man-to-man." Attorney Driscoll did not know of the details of this matter and was not informed of them. Because of his long standing relationship with Mr. Demelis, Attorney Driscoll wrote Exhibit #11 which is a very generic letter. Substantially, it indicates that there were some monies due that should be repaid. There was never a retainer letter. Attorney Driscoll was never paid for this. Attorney Driscoll received nothing in writing from Mr. Demelis. He discussed an attachment but never stated that he had attached any property. All Mr. Driscoll received was a verbal claim. He never obtained a who, what, when, where and why, and in fact doesn't remember the last time he discussed this matter with Mr. Demelis. Mr. Driscoll is positive that he never told Mr. Demelis he attached the property. Mr. Driscoll said he never received any money, never held any money, and told this to Mr. Demelis' subsequent lawyers. There is no evidence that Mr. Driscoll ever collected any money.
The court finds that as to the McCarthy matter, the Statewide Grievance Committee has failed to establish that Rules 1.3, 1.4, 1.5 and 1.8 of the Rules of Professional Conduct were violated.
As to the second matter, the complaint states that property at 269 Thunderlake Road, Wilton, Connecticut was sold to Peter T. Hood and Linda Hood. Peter Hood testified at the hearing. Apparently, there was a promissory note and mortgage deed executed in the sum of $31,500.00. Attorney Driscoll was hired to represent Mr. Demelis in the collection of approximately $21,591.59 that was due. The claim is that proper accounting of the receipt of the proceeds CT Page 3196 was not made by Attorney Driscoll. The court notes that there is no claim that Attorney Driscoll did not repay all of the $21,591.59 that was collected by him, but the claim is that he did not respond to requests for information or for an accounting. The claim is that these actions violate Rules 1.3, 1.4, 1.15, 8, and 8.4 of the Rules of Professional Conduct.
In the course of their relationship over the years, Mr. Driscoll did work for Mr. Demelis as a closing attorney, and also did some zoning work for him. Peter Hood testified that he purchased the house and it was closed on approximately September 20, 1991. A $31,500.00 mortgage was to be paid over time. There was a second mortgage recorded on the Land Records, which mortgage was released as shown on Exhibit M. Mr. Hood made a few payments and then made some payments to Mr. Driscoll. He paid $10,500.00 at a point when he was out of work. He met with Mr. Driscoll on behalf of Mr. Demelis and agreed to pay $21,000.00 in three payments. Mr. Hood tendered a check for $10,500.00 leaving a balance due of $21,000.00. Evidence was introduced that Mr. Hood paid $7,500.00 on the refinance by way of the credit union loan shown as Exhibit #6. This reduced the balance due to $13,500.00. The $13,500.00 due, was set forth on Exhibit F which provided for payments to be made as set forth therein.
It is clear that Mr. Hood made the payments to Mr. Driscoll as follows: (1) On December 1, 1992, a check in the sum of $2,500.00 (Exhibit J) which was deposited to Mr. Driscoll's trust account. (2) A check dated February 1, 1993, in the sum of $2,500.00 (Exhibit I) deposited to Mr. Driscoll's trust account. (3) A check dated April 19, 1993, (Exhibit H) in the sum of $1,000.00 deposited to Mr. Driscoll's trust account. (4) A check for $7,500.00 dated December 20, 1993, (Exhibit G) deposited to Mr. Driscoll's trust account. Those checks (Exhibits G, H, I and J), plus the $7,500.00 credit union loan, total the $21,000.00 that Mr. Driscoll had to account for to Mr. Demelis.
The court finds Mr. Driscoll drew a check on October 29, 1992, in the sum of $7,250.00. This would correspond in time to the $7,500.00 received by way of the credit union funds from Mr. Hood (Exhibit #6). Mr. Driscoll deducted $250.00 from that amount for expenses. Exhibit O is a check from Mr. Driscoll to Mr. Demelis dated January 24, 1994, in the sum of $7,500.00. This corresponds in time to the money received from Mr. Hood on or about December 20, 1993 (Exhibit G). Attorney Driscoll then disbursed to Demelis $3,500.00 on May 10, 1993, which corresponds in time to the CT Page 3197 $3,500.00 received on February 1, and April 19, 1994, as paid by Mr. Hood (Exhibits H and I).
Exhibit Q is a letter to Mr. Driscoll from Goldstein and Peck indicating that Wilton v. Tartaglia Trustee was settled for $3,212.66. Mr. Demelis authorized the payment of those funds to Goldstein and Peck for Mr. Demelis' benefit as shown on Exhibits Q, R, and S. (A copy of the check for $3,212.66 is Exhibit S). Based on the testimony of Mr. Driscoll and the broker, the court is satisfied that Mr. Tartaglia and Mr. Demelis had such a relationship that it was appropriate for Mr. Driscoll to have paid the balance due on account with his clients authorization.
Mr. Driscoll indicated that all of the funds were paid in hand to Mr. Demelis. They met at the Country Diner and that was the way things were accounted for. Attorney Driscoll mailed only the last payment to Mr. Demelis' post office box in Wilton.
The court is satisfied that the attorney and the client had communicated sufficiently, and that this method of accounting was acceptable to the client. Both sides have addressed the issue of proper accounting. The Grievance Committee asserts the language on check #1473 that says "Hood Loan Payment of Balance" is unacceptable. The court has reviewed the totality of the checks and finds that each of the checks numbers 1308 and 1378 referred to Hood. This, coupled with the payment of the tax lien and the hand delivery of these, satisfies this court that there was a full accounting under Rule 1.15b of the Rules of Professional Conduct. Blacks Law Dictionary defines an accounting as "an act or system of making up or settling accounts; a statement of account or a debit and credit in financial transactions." This was the system adopted by these two participants to settle this account. The court notes that Exhibit #1, a letter written by Attorney Brown, does not spell out the amount claimed to be due. In fact, there was no evidence any money was collected from Joseph McCarthy.
Upon reviewing the facts of this case, the court finds that Mr. Driscoll complied with Rule 1.15 which required keeping accurate records of the status of funds of the client.
The court was troubled by Mr. Demelis' testimony. In his complaint against Mr. Driscoll in a civil action which is still pending in the court (Exhibit #8) he claims in Paragraph #6 that there was due $21,591.59 which the defendant collected. He claims in Paragraph #14 that Mr. Driscolls' failure to fully disclose and CT Page 3198 inform of the status of the matters was a deception and was fraudulent. It is clear to this court that Mr. Demelis received in three separate checks, all marked concerning Hood, the sum of $21,250.00 in addition to the amounts paid on account of a claim to Goldstein Peck. His pleadings read as though he received nothing. Also, in Paragraph #8 he admits that he was an Ex-partner of Mr. Tartaglia. The court finds more credible Mr. Driscoll's testimony that he was authorized to pay that debt on account of Mr. Demelis as having had a former partner. Mr. Demelis in his testimony before this court on November 29, 1995, says that he hired Mr. Driscoll to bring a suit and that Mr. Driscoll told him that he had sued Joseph McCarthy. The court finds more credible Mr. Driscoll's testimony that he never told him that, and that he never told him that there was a lien on the house. When Mr. Demelis was asked in the court proceedings how much Mr. and Mrs. Hood owed, he was not sure. $23,000.00 to $24,000.00 was the amount he claimed was owed. He further claimed that Mr. Driscoll sent him about $15,000.00 when it is clear that the three checks total $18,250.00 which is substantially in excess of his records. In response to the court's questioning, Mr. Demelis testifies that Mr. Driscoll brought a law suit against Mr. Hood and Mr. Driscoll told him that. (Transcript of proceedings, November 29, 1995, page 20). The court finds the testimony of Mr. Demelis not to be credible. There is no reason for Mr. Driscoll to say this, when in fact Mr. Driscoll had executed a note to resolve the matter and had money paid on account directly to Mr. Demelis.
It is clear from the testimony that Mr. Demelis has a litiney of complaints against Mr. Driscoll which the court finds affected his testimony. After a fair review of Mr. Demelis' testimony on November 29, 1995, the court finds that Mr. Demelis is not a detailed person, rather one who looks at chapter headings. At the testimony before the Committee he told his attorney that he had received about $9,000.00 (see Page 23). He testified before this court that he received $15,000.00. When asked to reconcile that he responded, "I'm really not clear how much money I got from Mr. Driscoll. . . ."[h]e told me he collected all the money. Yes ma'am. But I didn't receive the money." (Transcript, page 24). The court finds that he received the money. Mr. Demelis was questioned about the $15,000.00.
"The court: Well, how did you get paid this money, this $15,000.00? Did it come by check?
Mr. Demelis: Yes. CT Page 3199
The court: Did the check say what it was about on it? You know, when lawyers send checks they say concerning.
Mr. Demelis: No, sir, no, I called him.
The Court: Did you make copies of any of those checks?
Mr. Demelis: Pardon me?
The Court: Did you make copies of any of the checks.
Mr. Demelis: I called Mr. Driscoll. What should I apply this money to? And he told me, well I'll send you an account. I'll send you an account. And I never got a receipt. I got no accounts. Nothing." (Transcript, page 26).
The court finds that the three checks introduced into evidence all indicate that they were concerning Hood. The apparent motive of Mr. Demelis' testimony is his claim that Mr. Driscoll owes him over $30,000.00 as of today. The court asked him how he came up with that money.
"The Court: How much is the money from Hood?
Mr. Demelis: I'd say 8, 10, 9, 10 — I have no idea. I'm just guessing.
The Court: OK. What's the rest of it? That's 10 of the 30.
Mr. Demelis: Thirteen from McCarthy.
The Court: Thirteen from McCarthy?
Mr. Demelis: Yes
The Court: OK.
Mr. Demelis: And plus — I'm guessing again another 10 or 12 from the other things that he paid. He told me that he paid and I have no record of it." (Transcript, page 27).
In summary, Attorney Driscoll did what he was asked to do for McCarthy and did nothing else for a long standing client. The court finds the testimony of Mr. Driscoll more credible than Mr. CT Page 3200 Demelis' testimony that Mr. Driscoll told him that he brought a law suit and put a lien on the property. The court does not believe that testimony. As to the Hood matter, Mr. Demelis has an underlying motive, the fact that he believes that Mr. Driscoll owes him $30,000.00. The records here clearly show that at best, Mr. Driscoll's communications with his client could have been better. It is clear, however, that all of the checks disbursed laid out the monies, the final check that was cashed and negotiated, dated January 24, 1994, in the sum of $7,500.00, had on its front "For Hood Loan — Payment of Balance", and this check was signed by Mr. Demelis and deposited to his account on February 4, 1994. It appears to this court that Mr. Demelis is using the Grievance Committee proceedings in an attempt to claim monies that he believes are due him. The court finds the allegations of Paragraphs 1, 2, 3, 8, 9, 10, 11, 12, 18, 19 and 22 are proven. The court finds that Paragraphs 4, 5, 6, 7, 13, 14, 15, 16, 17, 20, 21, 23, 24, 25, 26 and 27 have not been proven. Paragraph 17 is one of the key paragraphs of the complaint and the court is satisfied that the checks on file as Exhibits N, O, and P substantiate that he did receive that money.
For all the foregoing reasons, the court dismisses the complaint. The court finds that under § 31 of the Rules of Practice, the Grievance Committee has not sustained their burden.
KARAZIN, J.