[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I. A.
On April 28, 1995, the petitioner, the Statewide Grievance Committee (hereinafter, "the Committee"), filed the instant presentment against the respondent, John E. Terzis, alleging that while he served as the president of the Sunmore Condominium Association, he misappropriated $2039.37 by utilizing such money to pay his personal office and residential expenses. The Committee maintains that the use of such funds constituted a violation of Rules 1.15 and 8.4 of the Rules of Professional Conduct.[1]
On September 11, 1995, the respondent moved to dismiss the action for various reasons, including but not limited to, a failure of the reviewing committee to render a timely decision; the lack of testimony that any Sunmore funds were commingled with the respondent's funds; the alleged fact that the Sunmore funds were not in the respondent's possession in connection with the legal representation of the complainant; the failure of certain witnesses to appear or give testimony at the grievance panel proceedings; and finally, that there was no clear and convincing evidence to prove that the respondent intended to defraud the association out of its money. On June 24, 1996, the respondent filed a second motion to dismiss (followed by an amended motion on October 3, 1996) essentially alleging that the Committee failed to comply with certain time requirements. The latter motion was heard first and on October 31, 1996, this court denied the motion, finding that a technical violation of the time limitations was not grounds for dismissal. On November 24, 1997, the initial motion to dismiss was denied by Judge Hale who found that the jurisdictional issues had been resolved in the motion heard by this court.
 B.
The Stipulation of Facts that was filed at the hearing on May CT Page 11133 27, 1998 states:
 1. The respondent served in an executive position with two or three other individuals of Sunmore Condominium Association from September 8, 1988 through July 17, 1990.
 2. During that period of time, the respondent wrote out approximately seven (7) electric bills incurred on account of respondent's personal residence and seventeen (17) electric bills incurred on account of his office's electrical services were paid from the Sunmore Condominium Association checking account.
 3. Two members of the executive committee were required to sign, and did in fact sign all checks on behalf of the Condominium Association.
4. That the total amount so paid was $2,039.27.
 5. Said payments came to light after July 1990, as a result of an audit by CPA Michael Esposito.
 6. That the respondent, upon being advised of the findings, repaid said amount to the Condominium Association on that day, less the special assessment of $750 which was rescinded by the Board of Directors and which had been paid by the respondent, and less a legal fee of $350 on a foreclosure for unpaid common charges commenced on behalf of the Condominium Association.
 7. That the respondent represented the condominium association on one foreclosure action for unpaid common charges.
 II. A.
As mentioned earlier, the Committee is seeking disciplinary action against Mr. Terzis on the grounds that the payment of 24 electric bills for his residence and his office constitutes a violation of Rules 1.15 and 8.4(3) (formerly 8.4(c)). The respondent argues that as the Committee's burden of proof is clear and convincing evidence, Statewide Grievance Committee v.Whitney, 227 Conn. 829, 838, 633 A.2d 296 (1993), and that as the only evidence before this court is the stipulation of facts and CT Page 11134 the respondent's testimony, there is insufficient evidence to find that he violated those rules. More specifically, the respondent maintains that while there is clear and convincing evidence that he wrote checks on the condominium account, "there is no evidence of a fraudulent motive." He thus argues that without evidence of fraudulent intent, the Committee cannot prove its case. The Committee, on the other hand, argues that a finding of scienter is not required in disciplinary proceedings citing InRe: Zoarski, 227 Conn. 784, 632 A.2d 114 (1993) and StatewideGrievance Committee v. Presnick, 18 Conn. App. 316, 320,559 A.2d 220 (1989) in which the court held, in an action involving the procedure rule to 8.4(3), 1-102(A)(4), that the rule does not "require a finding of corrupt motive or bad faith." The Committee also stresses that the commentary states that the rule applies to factual situations such as this without any requirement of a corrupt intent.
 1.
Our Supreme Court stated in In Re: Zoarski, supra,227 Conn. 784, that "scienter is not essential for the occurrence of an ethical violation" citing Patterson v. Council on ProbateJudicial Conduct, 215 Conn. 553, 567, 557 A.2d 701 (1990) ("Judges no less than lawyers are chargeable for deviations from the codes governing their conduct, even though the application of the canons to particular circumstances may not be readily apparent.") Id., 567. In Statewide Grievance Committee v.Presnick, supra, 18 Conn. App. 322, the court held:
 Here, the defendant was charged with specific violations of the disciplinary rules of the code of professional conduct, which resulted in his suspension. While the trial court may consider evidence of good motives and good faith in reaching its conclusions, neither of the disciplinary rules involved requires a finding of corrupt motive or bad faith. After a full evidentiary hearing, the court found to have been established by clear and convincing proof . . . that the defendant had violated each of the specified disciplinary rules. Nothing further was required to impose appropriate disciplinary action, including suspension from practice.
CT Page 11135
The issue was revisited recently in In Re: Flanagan,240 Conn. 157, 690 A.2d 865 (1997), in which the court rejected the argument that proof of a wilful intent or specific intent is required. It reviewed the ruling in In Re: Zoarski, supra,227 Conn. 791, in which it held that conduct "prejudicial to the impartial and effective administration of justice" in violation of General Statutes § 51-51i(a)(1) did not require proof of a wilful violation, in contrast to a violation of any canon of judicial ethics in violation of General Statutes § 51-51i(a)(2).[2]
While subsection 8.4(3) could be deemed to be the equivalent of a canon of judicial ethics under General Statutes § 51-51i(a)(2), as 8.4(4) is the functional equivalent of General Statutes §51-51i(a)(1), the requirement for proof of scienter was rejected by the court. It held that "specific intent to violate the canons is not required by § 51-51i(a)(2)." Id., 182.
The court concluded:
 We conclude, therefore, that a judge is subject to discipline for a "wilful violation of . . . any canon of judicial ethics" as long as he or she intends to engage in the conduct for which he or she is disciplined, whether or not he or she has the specific intent to violate the canon.
Id., 184.
 2.
Rule 8.4(3) contains four related components: dishonesty, fraud, deceipt and misrepresentation. In this case, the respondent was charged with violating the rule and not a specific subsection. The Committee's burden of proof for fraud is "clear and satisfactory evidence," Miller v. Appleby, 183 Conn. 51, 55,431 A.2d 811 (1981), or "clear, precise, and unequivocal" evidence, Barbara Weisman, Trustee v. Kaspar, 233 Conn. 531, 540,661 A.2d 530 (1995) and the burden of proof to show a violation of the disciplinary rules is clear and convincing evidence.Statewide Grievance Committee v. Whitney, supra, 227 Conn. 838.
Based upon the stipulation of facts and the respondent's testimony, this court believes the Committee has met its burden and has proved a violation of rule 8.4(3). The stipulation of facts notes that the respondent paid "seven electric bills" for his residence and "seventeen electric bills" for his office out CT Page 11136 of the Sunmore account. While the total amount may only be $2039.37, that cannot be deemed to be an insignificant sum of money. See generally, Hodel v. Irving, 481 U.S. 704, 714,107 S.Ct. 2076, 95 L.Ed.2d 668 (1986). Moreover, the actions took place over a 22 month period. It surely cannot be argued that this was a one or two time occurrence. While Mr. Terzis testified that another member of the condominium board initially wrote out the checks, he stated that when that person left, Mrs. Terzis would open the mail and collate the bills. Mr. Terzis would then write out the checks as well as any account notation. There was apparently no regularity with the checks: some had a notation for one utility account; others had two; some had three; some four and still others, none. Nevertheless, a review of the checks indicates that there were only two proper accounts; the other two accounts were either Mr. Terzis' residence or his office.
Mr. Terzis maintains that the checks were signed inadvertently and that his wife was responsible for the "confusion"; this court does not agree. In order to write the checks, he would first have to review the electric bill. Then he would be required to total the different accounts and, at least at times, place the account number(s) on the checks. The respondent testified that it was he who would write the account number(s) on the checks. Mr. Terzis was not simply acting as a scribe; he "served in an executive position" with the association and, he testified that he is both a C.P.A., and a lawyer. It was surely his duty, at a minimum, to inquire or investigate which account was being paid. Of great significance to this court is Mr. Terzis' own testimony that even though he was the person who paid his family's bills, he never thought it odd — for such a long period of time — that he was not regularly paying any electric bills for his home and office.
Mr. Terzis has also argued that he was too wealthy and successful to commit such acts. This court rejects such statements.
Finally, Mr. Terzis testified that when he was advised of the problem he delivered a check to Sunmore — not for the full $2039.37 but rather for that sum less a special assessment of $750 which he had paid and which the Association had rescinded and less a legal fee of $350 for foreclosure work.[3]
Our Supreme Court recently stated, in discussing the Committee's burden of proof of clear and convincing evidence, CT Page 11137 that: "[c]lear and convincing proof denotes a degree of belief that lies between the belief that is required to find the truth or existence of the [fact in issue] in an ordinary civil action and the belief that is required to find guilt in a criminal prosecution. . . . [The burden] is sustained if evidence induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist." (Internal quotation marks omitted.) Wildwood Associates, Ltd. v. Esposito, 211 Conn. 36,42, 557 A.2d 1241 (1989). Of course, "[t]he general rule that fraud is not presumed, but must be proved by the party who alleges it, does not mean that it cannot be otherwise proved than by direct and positive evidence; circumstantial evidence may be sufficient." Puro v. Henry, 188 Conn. 301, 310, 449 A.2d 176 (1982).
The commentary to Rule 8.4 states that "[a]lthough a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable only to offenses that indicate lack of those characteristics relevant to law practice. Offenses involving violence, dishonesty, breach of trust, or serious interference with the administration of justice are in that category. A pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation."
The seven payments for the personal residence and the seventeen payments for the office certainly indicate to this court, at a minimum, an indifference to a legal obligation and a violation of Rule 8.4(3). Repeatedly writing checks for one's own benefit, on another's account, when charged with the care of the account constitutes a violation of the rule. To conclude otherwise, in a situation in which the simplest act of prudence would have prevented such action, is not possible.
 3.
The respondent has also been charged with violating Rule 1.15 concerning the safeguarding of property. This court notes that the stipulation of facts indicates that Mr. Terzis "served in an executive position" for the Association; it does not say that he was its attorney. Nevertheless, by his own admission, he did represent the Association and in July 1990, when he was still writing checks; he billed or was in the position to bill, the Association for foreclosure work. To the extent he wrote the CT Page 11138 subject checks utilizing the client's money for his own personal expenses, he surely did not safeguard his client's property.
As the court stated in Banks v. Vito, 19 Conn. App. 256, 262,562 A.2d 71 (1989):
 Authority exists in this state for officers, directors, and majority shareholders to be held personally liable for breach of fiduciary duty when evidence shows a misappropriation of corporate funds for personal benefit and subsequent fraudulent concealment. See Pacelli Bros. Transportation, Inc., v. Pacelli, 189 Conn. 401, 407-409, 456 A.2d 325 (1983). As our Supreme Court has stated, "`[t]hou shall not steal' is basic. Not only the theft, but also [the] failure to disclose it [are] violations of the trust imposed upon him in that capacity. `An officer and director occupies a fiduciary relationship to the corporation and its stockholders.' Katz Corporation v. T. H. Candy Co., 168 Conn. 201, 207, 362 A.2d 978 (1975)." Pacelli Bros. Transportation, Inc. v. Pacelli, supra, 407.
In conducting these acts, he violated his position of trust whether in his capacity as attorney for the association or executive for the association. Both rules have been violated.
 B. "An attorney as an officer of the court in the administration of justice, is continually accountable to it for the manner in which he exercises the privilege which has been accorded him. His admission is upon the implied condition that his continued enjoyment of the right conferred is dependent upon his remaining a fit and safe person to exercise it, so that when he, by misconduct in any capacity, discloses that he has become or is an unfit or unsafe person to be entrusted with the responsibilities and obligations of an attorney, his right to continue in the enjoyment of his professional privilege may and ought to be declared forfeited. . . . Therefore, [i]f a court disciplines an attorney, it does so not to mete out punishment to an offender, but [so] that the administration of justice may be safeguarded and the CT Page 11139 court and the public protected from the misconduct or unfitness of those who are licensed to perform the important functions of the legal professions."
(Emphasis in original.) Doe v. Statewide Grievance Committee,240 Conn. 671, 684-85, 694 A.2d 1218 (1997), quoting Massameno v.Statewide Grievance Committee, 234 Conn. 539, 554-55,663 A.2d 317 (1995). This court is certainly familiar with the American Bar Association's Standards for Lawyer Sanctions ("Standards") which, while not adopted by the judges of this state, have been widely used in determining the proper sanction to impose in disciplinary actions.[4] The system balances aggravating and mitigating factors.[5]
In this case, the aggravating factors include: (b) a dishonest or selfish motive; (c) a pattern of misconduct; (d) multiple offenses and (g) a refusal to acknowledge the wrongful nature of the conduct. The mitigating factors include (1) an absence of a prior disciplinary record and perhaps, (4) a timely good faith effort to make restitution.[6] In no way do the mitigating factors outweigh the aggravating factors; however, this court notes that the issues involved herein occurred almost eight to ten years ago. There have been no other complaints against the respondent and he is not now practicing or living in Connecticut.
Returning to Section 3.0, Mr. Terzis violated the duty to appropriately safeguard his client's funds. The court received no evidence on his mental state. The injury to his client was real and not discovered until an audit was performed. The combination of aggravating factors of multiple offenses and the refusal to acknowledge the wrongful conduct outweigh the mitigating factors. As noted by one court:
 [w]hatever the need may be for the lawyer's handing of client's money, the client permits it because he trusts the lawyer. . . . [T] here are few more egregious acts of professional misconduct of which an attorney can be guilty than the misappropriation of a client's funds held in trust.
In Matter of Wilson, 81 N.J. 451, 409 A.2d 1153, 1154-55 (1970), citing In Matter of Beckman, 79 N.J. 402, 400 A.2d 792, 793
(1979). CT Page 11140
In light of the facts stated above and after considering the ABA factors, it is the decision of this court that Mr. Terzis be and is hereby suspended for a period of one year, effective immediately.
Berger, J.